# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

RALPH STATZER,

                Petitioner,             :    Case No. 1:18-cv-626

      - vs -                            District Judge William O. Bertelsman
                                            Magistrate Judge Michael R. Merz

DAVID MARQUIS, Warden,
  Richland Correctional Institution,

                                  :

                Respondent.

# REPORT AND RECOMMENDATIONS

With the assistance of counsel, Petitioner Ralph Statzer brought this habeas corpus action pursuant to 28 U.S.C. § 2254 to obtain relief from his conviction in the Butler County Court of Common Pleas on five counts of oral rape of his minor granddaughter and his consequent incarceration in Respondent's custody. The case is ripe for decision on the Petition (ECF No. 1), the State Court Record (ECF No. 4), Respondent's Return of Writ (ECF No. 5), sealed portions of the State Court Record (ECF Nos. 7 and 8), Petitioner's Reply (ECF No. 12), a sealed Supplement to the Record (ECF No. 14), and a Supplemental Memorandum supporting relief (ECF No. 15).

The Magistrate Judge reference in this case was recently transferred to the undersigned to help balance the Magistrate Judge workload in the District (ECF No. 16).

**Litigation History**

**Summary**

Petitioner Ralph Statzer was originally indicted by a Butler County grand jury on May 21, 2014, on four counts of rape of his minor granddaughter in violation of Ohio Revised Code § 2907.02(A)(1)(b) (Counts 1-4) and one count of gross sexual imposition on her friend, another minor, in violation of Ohio Revised Code § 2907.05(A)(4) (Count 5). (Indictment, Case No. CR2014-05-0807, State Court Record ECF No. 4, SCR, Exhibit 1). A superseding indictment in October 2014 added one count of rape. The indictment was later amended to narrow the date range on Counts One, Two, Five, and Six (Order to Amend, State Court Record, ECF No. 4, Ex. 7).

The case was tried to the bench and Statzer was found guilty on the rape charges but not guilty on the gross sexual imposition count. The trial court then imposed sentences of life with parole eligibility after serving ten years on Counts 1 and 2, eighteen years to life on Count 3, and sentences of ten years to life on Counts 4 and 5, all to run concurrently. (Judgment, State Court Record, ECF No. 4, Ex. 9).

On direct appeal, the Ohio Twelfth District Court of Appeals overruled Statzer's first two assignments of error, but remanded for re-sentencing on Count Three. *State v. Statzer*, 2016-Ohio-7434 (Ohio App. 12th Dist. Oct. 24, 2016)("*Statzer I*"), appellate jurisdiction declined, 149 Ohio St. 3d 1464 (2017). On remand the sentence on Count Three was amended to fifteen year to life and the other sentences remained unchanged.

On September 23, 2016, with the assistance of counsel, Statzer filed a petition for post-conviction relief under Ohio Revised Code § 2953.21 (State Court Record, ECF No. 4, Ex. 18).

On February 8, 2017, the trial court dismissed the petition as barred by *res judicata* (Entry, State Court Record, ECF No. 4, Ex. 22). The Twelfth District affirmed the dismissal. *State v. Statzer,* 2018-Ohio-363 (Ohio App. 12th Dist. Jan. 29, 2018)("*Statzer II*"), appellate jurisdiction declined, 2018-Ohio-2155 (2018).

### Detail of Litigation History Relevant to Habeas Claims

Statzer was represented at trial by Attorney Justin W. Bartlett (See PageID 21). Bartlett is the only attorney accused of providing ineffective assistance of trial counsel in this case. On March 3, 2015, the State moved "to exclude any evidence offered by the Defendant as to specific instances of victims[1] [name redacted; initials are "M.S."] sexual activity, opinion evidence of victims' sexual activity, or reputation evidence of victim's sexual activity as said evidence is inadmissible pursuant to O.R.C. 2907.02(D), otherwise know [sic] as the "Rape Shield Law" (Motion in Limine, State Court Record, ECF No. 4, PageID 19.)

Bartlett opposed the Motion in Limine, arguing applying the Rape Shield statute to this case would not further the purposes of the statute as identified by the Ohio Supreme Court in *State v. Gardner,* 59 Ohio St.2d 14 (1979). Specifically he said

> Defendant seeks to introduce evidence of M.S.' prior allegations against Richard Keith. Specifically, M.S. filed a complaint with the Department of Job and Family Services in March of 2014 alleging that Richard Keith had sexually abused her. At that time, M.S. also made further - and inconsistent - allegations against the Defendant. Relevantly, Job and Family Services concluded that M.S.' complaints were "*unsubstantiated*." Job and Family Services made an identical finding regarding M.S.' August 2010 complaint against the Defendant. Based on these findings, Defendant seeks to introduce evidence of M.S.' allegations against Richard Keith as evidence of M.S.' credibility and possible fabrication, not merely to

---

[1] Although the Motion uses the plural, the Magistrate Judge understands only one victim is involved.

show that M.S. is promiscuous. Accordingly, we submit that the interests advanced by the rape shield law are not advanced by applying it in this case.

Lastly, it should [be noted that] that the rape shield law was designed to prevent a jury from trying the victim rather than the defendant. As the Defendant has elected to waive his right to a jury and proceed with a bench trial, these concerns are not present.

(Memorandum in Opposition, State Court Record, ECF No. 4, PageID 22-23.)

In response the State filed a Supplemental Memorandum disputing Mr. Bartlett's characterization of the findings of Job and Family Services and representing that its May 8, 2014, report had been furnished to Bartlett on August 14, 2014 (State Court Record, ECF No. 7, PageID 453 (filed under seal in this Court)). The parties agreed that any rape shield issues would be dealt with during trial and they were (Trial Tr., State Court Record, ECF No. 8, PageID 554-60.)

On appeal Petitioner was represented by Attorney Fred Miller (See State Court Record, ECF No. 4, PageID 40). His first assignment of error challenged the manner in which the trial judge handled the Rape Shield issue, which the Twelfth District overruled. Assignment of Error Two is his ineffective assistance of trial counsel claim. Statzer argued "Counsel is ineffective when he fails to fully cross-examine a rape victim regarding her prior inconsistent statements about the rape, when he fails to elicit necessary facts at a rape shield hearing, and when he fails to challenge the constitutionality of the rape shield statute." (Appellant's Brief, State Court Record, ECF No. 4, PageID 42.)

The Twelfth District Court of Appeals decided Statzer's Second Assignment of Error as follows:

[*P14] Assignment of Error No 2:

[*P15] APPELLANT RECEIVED THE INEFFECTIVE ASSISTANCE OF COUNSEL.

[*P16]  Statzer argues that his convictions must be reversed because he received ineffective assistance of counsel.  Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *State v. Hendrix,* 12th Dist. Butler No. CA2012-05-109, 2012-Ohio-5610, ¶ 14. To prevail on an ineffective assistance of counsel claim, Statzer must show his trial counsel's performance fell below an objective standard of reasonableness and that he was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L. Ed. 2d 674 (1984).

[*P17]  In order to demonstrate prejudice, Statzer must establish that, but for his trial counsel's errors, there is a reasonable probability that the result of trial would have been different. *State v. Kinsworthy,* 12th Dist. Warren No. CA2013-06-053, 2014-Ohio-1584, ¶ 42. A "reasonable probability" is a probability that is "sufficient to undermine confidence in the outcome." *Strickland* at 694. The failure to make an adequate showing on either prong is fatal to an ineffective assistance of counsel claim. *Kinsworthy* at ¶ 42.

**Rape shield hearing**

[*P18]  Statzer contends that counsel was ineffective during the rape shield hearing and should have inquired further of the victim concerning the alleged false allegation of rape. This argument is meritless for the reasons set forth in our discussion on the first assignment of error. Statzer failed to demonstrate that the victim made a false accusation. Moreover, even if he had met his burden of proving that the accusation was false, further cross-examination at trial would be precluded by the rape shield law because there was sexual activity involved.

**Failure to claim rape shield statute unconstitutional as applied**

[*P19]  Statzer argues that his counsel was ineffective for failing to challenge the constitutionality of the rape shield law as it was applied to him. The rape shield law prohibits the admission of evidence concerning a victim's sexual activity except in some narrow circumstances. R.C. 2907.02(D). Necessarily, any restriction on a defendant's ability to cross-examine an accuser could impede due process rights.

[*P20] But a defendant's due process rights must be balanced against the state's interest in the rape shield law. *State v. Hart*, 112 Ohio App.3d 327, 331, 678 N.E.2d 952 (12th Dist.1996). To determine whether the rape shield law was unconstitutionally applied, the state's interest must be balanced against the probative value of the excluded evidence. *Id*. at 331-332. Legitimate state interests include guarding the victim's privacy, preventing the victim from undue harassment, and discouraging the tendency in rape cases to try the victim rather than the defendant. *Id*. at 332.

[*P21] To assess the probative value of the excluded evidence, it is necessary to examine its relevance to the issues for which it was offered. *Id*. Here, the excluded evidence was intended to demonstrate that the victim falsely accused another relative of a different rape, i.e., to attack the victim's credibility. But Statzer offered no credible evidence establishing the falsity of the allegation. Thus, the excluded evidence lacked probative value. Moreover, the excluded evidence was oriented exclusively towards impeaching the victim's credibility and was not probative of any material issue in the case, i.e., whether Statzer raped the victim on specific dates over the course of multiple years. Consequently, an as-applied challenge to the rape shield law would lack merit and counsel cannot be deficient for failing to raise a meritless claim.

### Failure to cross-examine and call a witness

[*P22] Statzer contends that counsel was ineffective for failing to confront the victim with an affidavit. The affidavit, signed by a relative, alleged that the victim told the relative that the victim's mother pressured her into making false accusations of rape against Statzer. However, Statzer's counsel did cross-examine the victim on this specific allegation and the victim denied the claim. Accordingly, this argument lacks merit.

[*P23] Statzer also argues that counsel was ineffective for failing to ensure that the relative who signed the affidavit appeared and testified at trial. The record demonstrates that Statzer's counsel twice subpoenaed the relative to appear, once by personal service and once by certified mail, and neither attempts [sic] at service were [sic] successful. The record does not reflect whether counsel made any additional efforts to secure the witness.

[*P24] Even if counsel made no further attempts we cannot find any deficiency on this record. It is well-established that the choice to call witnesses is a trial tactic.

CA2001-03-056, 2002-Ohio-5505, at ¶ 22. Trial tactics are afforded the presumption of reasonableness. To overcome that presumption, and to establish prejudice, Statzer "must establish that the testimony of the witness would have significantly assisted the defense[,] and that the testimony would have affected the outcome of the case." Id.

[*P25] We conclude that the relative's anticipated testimony would not have changed the outcome of this case. This prosecution hinged on the credibility of the victim, witnesses, and Statzer. Here, the trial judge believed the victim's testimony describing five separate instances where Statzer raped her. We defer to the factfinder on credibility determinations. *State v. Andrews*, 12th Dist. Butler No. CA2009-02-052, 2010-Ohio-108, ¶ 46.

[*P26] And after having reviewed the record, we find no error in the trial court's determination that Statzer's testimony was not credible. Statzer's version of events at trial was inconsistent with his earlier statements. And Statzer's claim that the minor victim asked him to perform oral sex on her, that she became angry at him when he refused, and then decided to falsely accuse him of rape, strains credibility. Consequently, we find nothing to suggest that the relative's anticipated testimony would have affected the outcome of the case. Accordingly, we overrule the second assignment of error.

*Statzer*, 2016-Ohio-7434.

Before the Twelfth District entered judgment on October 24, 2016, Statzer had already changed lawyers and acquired the services of his present counsel, Attorney Christopher Pagan, who filed the petition for post-conviction relief on September 23, 2016[2] (ECF No. 4, PageID 160, et seq.) In that Petition, Statzer pleads one ground for relief

Statzer's 6th Amendment right to effective assistance of counsel was violated where

1) his trial counsel failed to develop evidence at the rape shield hearing to permit the effective cross-examination of the victim;

---

[2] This was a month before the Twelfth District's decision on direct appeal, but only a day before the one-year statute of limitations for post-conviction petitions would have expired. That statute is not tolled while a direct appeal is pending, so Statzer could not wait to see what the appellate court would do with his direct appeal ineffective assistance of trial counsel claim.

2) his trial counsel failed to challenge the constitutionality of the rape shield bar to permit the effective cross-examination of the victim; and

3) his trial counsel failed to impeach the victim -- intrinsically and extrinsically -- with a prior inconsistent statement that she had lied in Statzer's case due to pressure from her mother.

*Id.* at PageID 170-71. In support of the Petition, Statzer offered the legal opinion of his appellate attorney, Fred Miller, as follows:

4. That Statzer's counsel was ineffective under the 6th amendment in the following ways:

i) Counsel failed to develop a record at the rape-shield hearing to show that the victim had made a prior, false allegation of rape. Specifically, but not exclusively, counsel failed to obtain testimony -- by use of compulsory process or otherwise -- from Richard Keith, Shina Eckman, and records from the Department of Job and Family Services to show the absence of sexual activity and that the prior allegation was false. No reasonable trial strategy supported this failure. The rape shield evidence was not part of the trial evidence and the victim's credibility was the singular basis of the State's case.

ii) Counsel also failed to challenge the constitutionality of the rape-shield statute on an "as applied" basis. Specifically, counsel failed to elicit evidence from Richard Keith, Shina Ekman, and the records from the Department of Job and Family Services to satisfy the test from *State v. Hart*, 112 Ohio App. 3d 327 (1996) and *State v. Young*, 8th Dist., 2009-0bio-5354, ¶34, There was no reasonable trial strategy to support this failure. The rape-shield statute must yield to the defendant's right present a defense and confront witnesses. Evidence that the victim previously lied regarding rape was critical to undermining her testimony against Statzer. Asserting the constitutional argument was a second way to achieve Statzer's right to cross-examine the victim in the most effective way. Once the rape-shield hearing was convened, there was no reasonable tactic to forego the constitutional argument.

iii) Counsel failed to develop, or to use compulsory process to develop the testimony of Shina Eckman as impeachment evidence. The victim told Eckman she had lied about the Statzer allegations. Thus, the victim was subject to heavy impeachment under

> Evid.R.613(A) for a prior inconsistent statement going to the very basis of the allegations. And Eckman could have been called as a witness to repeat the victim's statements under Evid.R.613(B) to prove the victim's bias. Statzer had a failed affair with the victim's mother, so the allegations were in revenge for the failed affair, establishing the victim's bias against Statzer. There was no reasonable trial strategy to support this failure. Credibility was the sole issue and Eckman's testimony that the victim confessed to lying was the best evidence to attack credibility and show bias.

(Miller Affidavit, State Court Record, ECF No. 4, PageID 172-73.)  There is no attached affidavit from Shina Eckman or Richard Keith indicating what they would have testified to if called as witnesses, either at trial or in a post-conviction evidentiary hearing.[3]

The State opposed the Petition for Post-Conviction Relief on the grounds of *res judicata*, asserting that the ineffective assistance of trial counsel claim in the Petition was exactly the same claim made in the then-pending direct appeal (State's Response, State Court Record ECF No. 4, Ex. 19).  The prosecutor noted that the Post-Conviction Petition was not supported by new material evidence outside the record, but only by appellate counsel's affidavit, which essentially reiterated his brief. *Id.*

Once the Twelfth District rendered its direct appeal decision on October 24, 2016, the State reiterated its *res judicata* position in a Motion to Dismiss (State Court Record, ECF No. 4, Ex. 20). Several months later in January 2017, Statzer opposed the Motion to Dismiss and sought an evidentiary hearing (Memorandum, State Court Record, ECF No. 4, Ex. 21).  Now the focus had changed from Shina Eckman to Richard Keith:

> He [Statzer] alleged ineffective assistance of trial counsel for failing to develop and advance the Keith evidence. A private investigator was engaged. The investigator interviewed Keith. Keith stated*, inter alia*, that he neither orally raped nor sexually abused M.S., that Sara[4]

---

[3] It appears that the statute of limitations as to M.S.'s accusations of sexual abuse against Keith would not have expired as of the time of trial so that he would have been entitled to invoke his Fifth Amendment privilege if asked in Statzer's trial whether he had engaged in sexual conduct with M.S.
[4] Sometimes spelled "Sara" in the record and sometimes spelled "Sarah."

> Statzer pressured M.S. to lie about him, that Sara Statzer told Keith's sister that she lies about oral sex to 'fuck with' men, and that the instant allegations arose after Keith confronted Sara Statzer about her failed affair with petitioner. Exhibit A. Keith and Sara Statzer were litigating a domestic violence case when Keith confronted Sara.

*Id.* at PageID 280. Exhibit A is the Affidavit of Sherry Richardson, hired by Attorney Pagan to investigate. Ms. Richardson provides an account of her interview with Keith which demonstrates, if nothing else, the animus between Richard Keith and Sara Satzer

Richardson reports that an affidavit from Keith is "currently being pursued" and she has been retained to interview two other men against whom false allegations of oral rape were, according to Keith, made by Sara (*Id.* at PageID 288). No results of that investigation are later reported and Keith, on advice of counsel, refused to give an affidavit.

Relying on controlling precedent from his own appellate district, the trial judge dismissed the Post-Conviction Petition without an evidentiary hearing (Dismissal, State Court Record, Ex. 22, relying on *State v. Lawson*, 2014-Ohio-3554 (Ohio App. 12th Dist. 2014). He concluded that Statzer's claim that the rape shield statute was unconstitutional as applied and about impeachment of M.S. with her prior inconsistent statements to Eckman had been decided on direct appeal. *Id.* at PageID 295. Keith's involvement and the existence of the Jobs and Family Services records were also reflected in the trial transcript. *Id.* He references the places in Statzer's appellate brief where the relevant documents needed to raise the ineffective assistance of trial counsel issues can be found. *Id.* at PageID 296. Finally he notes that the evidence offered (the Richardson and Popp Affidavits) is entirely hearsay. *Id.* Hence, he concluded, the ineffective assistance of trial counsel claims in the Post-Conviction Petition were barred by *res judicata*.

On appeal, again to the Twelfth District, Statzer relied on an exception to *res judicata* recognized in *State v. Cole*, 2 Ohio St. 3d 112 (1982), for post-conviction petitions based on

evidence *dehors* the trial record (Appellant's Brief, State Court Record, ECF No. 4, PageID 308-09). He asserted the ineffective assistance of trial counsel sub-claim related to not calling Richard Keith had been rejected on direct appeal because the Twelfth District found that the fact of M.S.'s lying about being orally raped by Keith was outside the record. *Id.* at PageID 309, citing *Statzer I* at ¶¶ 18, 21. The post-conviction record, however, was expanded, he says, with

> A private investigator's affidavit indicated that Keith stated that M.S. had lied about the oral rapes; and the Job and Family Services report stated that M.S.'s allegations-which Keith said were lies-arose after Sarah lost to Keith in custody court, and, further, that Sarah used M.S.'s allegations against Keith to try and undo the unfavorable custody orders.

*Id.*

Regarding the failure to pursue evidence from Eckman, Statzer's Brief asserts:

> Eckman signed an affidavit stating that M.S. confessed to lying about Statzer's abuse under pressure from Sarah. [footnote omitted] This evidence would have further impeached M.S.'s credibility and explained that Sarah pressured M.S. to lie-comporting with Keith's claim that Sarah likewise pressured M.S. to lie in his case regarding oral rape. The Eckman affidavit was *dehors* the trial record but submitted in postconviction.

The Twelfth District affirmed the dismissal of the post-conviction petition on *res judicata* grounds. *Statzer II*. The court read Statzer's ineffective assistance of trial counsel claim on direct appeal to be that Attorney Bartlett

> provided ineffective assistance of counsel ("IAC") by failing to (1) effectively cross-examine the victim concerning an allegation that the victim falsely accused another man — Richard Keith — of rape, (2) challenge the constitutionality of the rape shield law as applied to Statzer, and (3) cross-examine the victim with respect to the affidavit of Shina Eckman, which averred that the victim's mother pressured the victim into falsely accusing Statzer of rape. [footnote omitted]

*Id.* at ¶ 3.

The appellate court noted that an Ohio trial court "properly denies a defendant's petition for postconviction relief without holding an evidentiary hearing where the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that petitioner set forth sufficient operative facts to establish substantive grounds for relief." *Id.* at ¶ 13, citing *State v. Calhoun*, 86 Ohio St. 3d 279 (1999), ¶ 2 of the syllabus.

The court rejected Statzer arguments to avoid *res judicata* as follows:

[*17]  This court concludes that Statzer's postconviction relief claims were barred by res judicata and that Statzer did not support his petition with competent, relevant, and material evidence outside the record on appeal. The IAC claims Statzer raised in his petition could have been or were raised and addressed by this court in Statzer's direct appeal. Accordingly, those claims are res judicata and Statzer was precluded from re-litigating those claims in the context of his petition for postconviction relief. Statzer disputes that the IAC claims raised in his petition are the same as those raised in his direct appeal. In his reply brief, he argues that the IAC claims in postconviction are for "failing to elicit known impeachment evidence." However, the IAC claims on direct appeal concerning the rape shield hearing and the Eckman affidavit were both premised on trial counsel's purported failure to impeach the victim's credibility concerning allegations that she falsely accused Keith and Statzer of rape. Accordingly, Statzer is simply "re-packaging" the same argument he raised on direct appeal. Moreover, if the impeachment evidence was "known," as Statzer concedes, then the argument could have been raised on direct appeal and is therefore barred by res judicata.

[*18]  Statzer also contends that he supported his petition with evidence outside the appellate record. Specifically, he claims that this court rejected his IAC claims on direct appeal because trial counsel failed to develop evidence concerning Keith and "the fact that [the victim] lied was dehors the trial record." However, the victim's statement concerning Keith was, as noted by the lower court, "extensively explored" at trial. As this court discussed in appellant's direct appeal, trial counsel cross-examined the victim regarding her statement that she was "not raped" by Keith and the victim explained that she did not understand the legal definition of rape when making the statement, i.e. she alleged sexual abuse, which she did not understand to be rape. *Statzer*, 2016-Ohio-7434 at ¶ 12, 72 N.E.3d 1202.

[*19]  Moreover, the documentary evidence Statzer submitted in support of his petition did not contain material, relevant facts establishing grounds for postconviction relief. Appellate counsel's affidavit summarized the claimed instances of IAC occurring at the trial, which appellate counsel was obviously aware of during the direct appeal and were in fact litigated during that appeal. The affidavit of Statzer's private investigator alleged that trial counsel failed to secure Keith's testimony at trial. This claimed issue was known and could have been raised on direct appeal. Other facts raised in the private investigator's affidavit, e.g., that Keith told the private investigator that the victim lied, or that the allegations arose during an unrelated custody dispute are marginal and insignificant. The office manager's affidavit alleged that Keith would not provide a sworn affidavit, which is also an insignificant fact.

[*20]  The affidavit of Shina Eckman does not constitute evidence outside the appellate record. Statzer filed the affidavit before trial and his trial counsel used it in crossexamining the victim. This court addressed and rejected Statzer's IAC claim concerning the Eckman affidavit and the alleged failure to secure Eckman's testimony. *Statzer* at ¶ 22-26.

[*21]  Finally, the redacted Job and Family Services report does not set forth relevant evidence outside the appellate record. The report summarizes that the victim alleged that Keith molested her multiple times. However, Keith retained counsel and would not provide a statement to police. The police did not have sufficient evidence with which to proceed against Keith and closed their investigation. This evidence is both insignificant and unhelpful to Statzer's IAC claims.

*Statzer II.*

After the Supreme Court of Ohio declined appellate review, Statzer filed the instant Petition for Writ of Habeas Corpus, pleading the following grounds for relief:

**Ground One:** Statzer was denied the effective assistance of counsel under the Sixth and Fourteenth Amendments because his trial attorney failed to elicit known impeachment evidence that demonstrated the complainant's bias and motive to misrepresent in a case that turned exclusively on credibility.

**Factual support:** In postconviction, Statzer presented the following:

The complainant's mother had an affair with Statzer and had been married to R.K. The complainant lived with the mother.

After R.K. obtained a custody order (involving another child) that burdened the mother, the mother had Statzer's complainant, who was in the mother's custody, make a false oral rape allegation against R.K. The mother then used the R.K. rape allegation to try and undo the unfavorable custody order.

R.K. confronted the mother about her affair with Statzer while attending a hearing in the custody case. It was after this hearing that the complainant similarly accused Statzer of oral rape.

The complainant told S.E. that her mother pressured her to lie about Statzer's oral rape because the mother was disappointed with Statzer for their failed affair.

**Ground Two:** Statzer was denied the right to confront witnesses and present a defense under the 6th and 14th Amendments: because the state court refused to consider evidence that the complainant was biased against Statzer and in favor of her mother, and evidence the complainant had made a prior false allegation of oral rape against R.K.

**Factual support:** On direct appeal and postconviction, Statzer presented the following:

That the complainant was biased and had a motive to misrepresent because of the facts stated in ¶10. This bias was reflected by her false oral-rape allegations against R.K. and Statzer. The complainant admitted to S.E. that she was pressured by her mother to lie about the Statzer oral-rape allegations. And a social worker heard the complainant yell that Statzer had not raped her – although she discounted this statement later.

(Petition, ECF No. 1, PageID 2-3.)

**Ground One:  Ineffective Assistance of Trial Counsel**

**The Parties' Positions**

In his First Ground for Relief, Petitioner asserts he received ineffective assistance of trial counsel when his trial attorney "failed to elicit known impeachment evidence that demonstrated the complainant's bias and motive to misrepresent. . . ."

Respondent asserts that this claim, insofar as it is the same claim of ineffective assistance of trial counsel raised in post-conviction[5], is barred by Statzer's procedural default in failing to raise the claim on direct appeal (Return of Writ, ECF No. 5, PageID 431).  The Warden asserts that Ohio's doctrine of *res judicata* in criminal cases bars later Ohio court consideration of a claim which was or could have been raise on direct appeal.  *Id.* at PageID 433-34, citing *State v. Perry*, 10 Ohio St. 2d 175 (1967).  The Twelfth District, the Warden argues, enforced this rule against Statzer on appeal from denial of his post-conviction petition.  *Statzer II*, ¶ 15, citing *Perry*. Because Statzer has failed to show excusing cause and prejudice or actual innocence and the Sixth Circuit has repeatedly held that the *Perry* doctrine is an adequate state procedural ground of decision, Respondent asserts Ground One is procedurally defaulted (Return, ECF No. 5, PageID 434.)

In the Traverse Petitioner's counsel summarizes Ground One as follows:

> Statzer's habeas claim is that trial counsel failed to investigate and
> call witnesses to impeach the victim and victim's mother[6] in a rape

---

[5] Petitioner confirms that it is the same ineffective assistance of trial counsel claim raised in post-conviction which he says is also the same claim raised on direct appeal (Traverse, ECF No. 12).  As raised on direct appeal, he calls it the "incomplete IAC claim," as distinguished from the "complete IAC claim" raised in post-conviction. *Id.*

[6] As far as the Magistrate Judge has been able to determine, this mention of failure to impeach Sarah Statzer in the Traverse is the first mention of a failure to impeach her as an instance of ineffective assistance of trial counsel.  The traverse is not an appropriate point to essentially amend habeas proceedings.  *Jalowiec v. Bradshaw*, 657 F.3d 293 (6th Cir. 2011), *citing Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005).

case. By Ohio rule, Statzer raised the claim with the evidence available to him on direct review and renewed the claim in postconviction after presenting the evidence unavailable in direct review.

(ECF No. 12, PageID 935.)   Statzer asserts no procedural default occurred and in any event "procedural bar does not apply to a twice-presented claim (once on direct review and again in postconviction.) *Id.* citing *Cone v. Bell*, 556 U.S. 449, 466 (2009).   Petitioner also asserts that, when this Court reaches the merits, it should not apply the deferential AEDPA standard. Instead "*[d]e novo* review applies because the last-reasoned postconviction decision rested solely on *res judicata* and no Ohio court ever adjudicated the merits of Statzer's developed IAC claim. *Id.* citing *Hill v. Mitchell*, 842 F.3d 910, 938-939, n. 14 (6th Cir. 2016). *Id.*

## Analysis

The Ohio criminal *res judicata* doctrine was adopted in *Perry*; the relevant paragraphs of the syllabus[7] in that case provide:

> 7. Constitutional issues cannot be considered in postconviction proceedings under Section 2953.21 et seq., Revised Code, where they have already been or could have been fully litigated by the prisoner while represented by counsel, either before his judgment of conviction or on direct appeal from that judgment, and thus have been adjudicated against him.  ...
>
> 9. Under the doctrine of *res judicata*, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was *raised or could have been raised by the defendant at the trial*, which resulted in that judgment of conviction *or on an appeal* from that judgment.

---

[7] From its adoption in 1858 until its abolition in 2002, the syllabus rule provided that the law in an opinion of the Supreme Court of Ohio was stated in the syllabus.

The Ohio courts have consistently enforced the rule.  *State v. Cole*, 2 Ohio St. 3d 112 (1982); *State v. Ishmail*, 67 Ohio St. 2d 16 (1981).  The Sixth Circuit has consistently held *res judicata* is an adequate and independent state ground of decision.  *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007); *Buell v. Mitchell*, 274 F.3d 337 (6th Cir. 2001); *Coleman v. Mitchell*, 268 F.3d 417 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir. 2000); *Rust v. Zent,* 17 F.3d 155, 160-61 (6th Cir. 1994)(citation omitted); *Van Hook v. Anderson*, 127 F. Supp. 2d 899, 913 (S.D. Ohio 2001).  However, an incorrect application of a state *res judicata* rule does not constitute reliance on an adequate and independent state ground.  *Wogenstahl v. Mitchell*, 668 F.3d 307, 341 (6th Cir.  2012), *citing Durr v. Mitchell*, 487 F.3d 423, 434-35 (6th Cir. 2007), and *Richey v. Bradshaw*, 498 F.3d 344, 359 (6th Cir. 2007).

The Twelfth District had previously held "presentation of competent, relevant, and material evidence *dehors* the record may defeat the application of *res judicata*."  *State v. Lawson*, 103 Ohio App. 3d 307 (12th Dist. 1995).  *Lawson* is consistent with the syllabus in *Cole*.  But *res judicata* is not defeated just by the presentation of some additional evidence.

> Evidence presented outside the record must meet some threshold standard of cogency; otherwise it would be too easy to defeat the holding of *Perry* by simply attaching as exhibits evidence which is only marginally significant and does not advance the petitioner's claim beyond mere hypothesis and a desire for further discovery.

*Lawson* at 315, citing *State v. Coleman*, Hamilton App. No. C-900811, 1993 Ohio App. LEXIS 1485 at 7 (Mar. 17, 1993).  To overcome the *res judicata* bar, evidence offered dehors the record must demonstrate that the petitioner could not have appealed the constitutional claim based upon information in the original record. *Lawson* at 315, citing *State v. Franklin*, Hamilton App. No. C-

930760,1995 Ohio App. LEXIS 183 (Jan. 25, 1995). In *Lawson,* which was a capital case[8], the Twelfth District held that the issues Lawson raised could have been fairly determined without resort to evidence dehors the record. "Information contained in Lawson's exhibits do not contain new evidence that was unavailable in the original record. Instead, the affiants have basically repackaged information already available in the record in order to second-guess Lawson's trial counsel." *Lawson* at 367-68.

When Statzer first filed his post-conviction petition in September 2016, the only "evidence" dehors the record that he presented was the affidavit of Fred Miller, his appellate attorney. When he followed up in January 2017, he presented the (1) Dept. of Job and Family Services Report, (2) the Eckman Affidavit, (3) the investigator's affidavit (Sherry Richardson), and his attorney's office manager's affidavit (Angela Popp).

The Miller Affidavit is certainly properly characterized as a "re-packaging" of what was presented on direct appeal and does not add materially to the record. If a litigant could avoid *res judicata* by presenting the expert opinion of his appellate attorney that the appeal had merit, *Perry* would be a dead letter.

**The Job and Family Services Report**

Of the Job and Family Services Report, Statzer claims

> The most important document was a Child Services' report showing
> i) the victim had made an unsubstantiated claim of oral rape against
> her stepfather, Richard Keith (Keith), ii) this rape allegation arose
> in custody litigation between Keith and the victim's mother, Sarah
> Statzer (Sarah), after the court awarded Keith custody of a child

---

[8] This Court granted Jerry Lawson's petition for habeas corpus, but he died on death row before the State's appeal was resolved.

because of Sarah's assault, and iii) that social workers heard the victim say, "I was not raped!" while discussing the Keith allegations.

Upon examination, it is unclear how many separate documents are included in the "Report." As filed, it comprises twenty-nine pages (ECF No. 14, PageID 949-77), but there are clearly several different documents involved. For example, PageID 977 says it is page 12 of 12 and PageID 965 says it is page 13 of 13. The document nowhere says M.S.'s allegations of oral rape against Richard Keith are false. Instead it says at several points that the police do not have enough evidence to "processed." Since the word "proceed" is clearly intended, repetition of the misspelling supports an inference of copying and pasting, but that also suggests the "document" was created at different points in time. The document reports that one of the reasons police could not proceed was because Richard Keith, on advice of counsel[9], refused to be interviewed. The Report does indicate there was on ongoing custody dispute between Keith and Sarah Statzer over their seventeen-year-old son who wanted to live with his father and who had a "no contact" protection order against his mother. According to the Report, Sarah was quite exercised that Family Services did not take M.S.'s allegations of rape against Keith as sufficient grounds to remove the son from Keith's home.

The Report includes an observation that during a telephone conversation with Sarah, M.S. could be heard in the background saying of her accusations against Keith "it wasn't rape." Attorney Bartlett used this reported occurrence in his cross-examination of M.S. who explained at trial that she then understood "rape" to mean non-consensual vaginal intercourse and her accusation was of cunnilingus. By the time of trial, she had learned that the Ohio legal definition of rape can include oral penetration.

---

[9] Presumably Attorney Joel Deutch, the same attorney who notarized the Eckman Affidavit in July 2014 and was still refusing to allow Keith to embody his statements to Investigator Richardson in an affidavit in January 2017.

How this Report as a document could ever have been admitted in evidence is not explained. The information it contains was used to cross-examine M.S. on the only relevant point, i.e., to show that she made a false accusation of oral rape against her stepfather[10] at the same time she made such an accusation against Statzer, her grandfather.

The Report was clearly available to Bartlett to use in cross-examination at the time of trial. If it was somehow necessary to prove the ineffective assistance of trial counsel claim on direct appeal. it was available to include in the appellate record.  If it was not, the fault would appear to lie with Attorney Miller whose duty it was as counsel on appeal to make sure the record was complete.  No allegation of ineffective assistance of appellate counsel has ever been made in this case as to him.

**The Eckman Affidavit**

The Shina Eckman Affidavit is dated July 16, 2014, and notarized by Joel Deutch, Richard Keith's attorney.  It purports to report conversations Eckman had with M.S. December 16, 2013, at Richard Keith's home.  It was provided to Attorney Bartlett August 2014.

The relevant paragraphs of Eckman's Affidavit aver:

> 5. I asked her [M.S.] why she was stressed out and she told me her mother, Sarah Statzer is making her make false accusations against her grandfather, Ralph Statzer,
>
> 6. That, [M.S.] went on to tell me that she was being forced by her mother, Sarah Statzer,to accuse Ralph Statzer of rape. That [M.S.] went on to tell me that Ralph Statzer did not rape her and it was a lie. [M.S.] was being forced to say these things because she has to live with her mother and she has to do what her mother sais [sic].

---

[10] The Magistrate Judge assumes "stepfather" is the correct label; the Report calls Richard Keith a stepparent.  Richard Keith and Sarah Statzer (maiden name unknown) apparently had a male child sometime before Sarah married Petitioner's son Rob and had M.S.

7. That I have decided to come forward at this time due to the fact I recently became aware that Ralph Statzer is being charged with the rape of [M.S.], That I wanted to report the above conversations to the appropriate persons so this can be brought out into the open.

(ECF No. 14, PageID 948.)

Affidavits are by their nature hearsay, so Attorney Bartlett could not have introduced the Eckman Affidavit in evidence at trial. However, as with the Family Services Report, he used the information in it to cross-examine M.S. When asked M.S. if she had told Eckman that her mother was forcing her to make false accusations, she denied having said so (Tr. Tr., ECF No. 8, PageID 543.)

Given M.S.'s denial of the statements, Ohio R. Evid. 613(B) would permit introduction of extrinsic evidence to prove the prior inconsistent statement only if both Rule 613(B)(1) and (2) apply. The cross-examination satisfied Rule 613(B)(1), but Statzer has not undertaken to show how 613(B)(2) would have been satisfied, he merely cites "Ohio Evid.Rs. 616(A), 608(B), 613(B)" *en gross* (Traverse, ECF No. 12, PageID 943).

Statzer next relies on *State v. Ferguson*, 5 Ohio St.3d 160 (1983), where the court held

> The general rule is that the pendency of a civil action brought against an accused by a witness in a criminal case is admissible as tending to show interest and bias of the witness to prove a motive to falsify, exaggerate or minimize on his part, in other words, to support a claim that such witness' testimony may be false or inaccurate, intentional or otherwise. Such evidence may be introduced in cross-examination. * * *

*Id.* at 166. The rule in *Ferguson* would have permitted Bartlett to cross-examine M.S. directly about whether her mother was pressuring her to make accusations against Keith and Statzer to show her bias, but given that she had already denied admitting that to Eckman, Bartlett might reasonably have expected a negative answer. Statzer's argument here assumes that answer would have been an admission of the pressure, but Bartlett could well have been obeying the oldest rule

of cross-examination: do not ask a question if you do not know the answer.

Statzer next relies on *Olden v. Kentucky*, 488 U.S. 227 (1988), and *Davis v. Alaska*, 415 U.S. 308 (1974), both of which are Confrontation Clause cases with no evident application here.

Statzer's counsel frequently mentions that Sarah was biased against Statzer because of her "failed affair" with him. The Court is given no record reference to admissible evidence of such an affair. If Bartlett knew of it, i.e., if he had a good faith basis for asking the question, he could have shown Sarah's bias by cross-examining her about it. But the notion that he provided ineffective assistance of trial counsel by not examining Sarah in any regard is not a claim Statzer made either in the state courts or here until the passing reference to it in the Traverse. And Statzer did not need any information about the "failed affair" to argue that M.S., for whatever reason, would be biased in favor of her mother. Bartlett showed that M.S. lived with her mother and, being a minor, was in her mother's custody. The trial judge knew those facts which allegedly show bias and still found M.S. to be a credible witness when compared with her grandfather.

Statzer criticizes Bartlett for not calling Eckman as a live witness at trial. However, he has produced no post-July 2014 evidence of what she would have testified to. Her testimony consistent with her affidavit that M.S. had said that Sarah pressured her to make the accusations would have been forbidden extrinsic evidence of a prior statement inconsistent with M.S.'s trial testimony. Bartlett did not need her live testimony to show that M.S. was living with her mother and was therefore probably biased in her mother's favor.

Bartlett is also criticized for not making sufficient effort to procure Eckman's live testimony. The record reflects, as the state courts found. that he served her with subpoenas twice. Was her testimony sufficiently critical that the trial judge would have granted a continuance and issued a bench warrant for contempt for the subpoenas? That seems very unlikely.

In sum, Eckman's Affidavit was probably more useful to Bartlett at trial than her live

testimony would have been: M.S. was confronted with her alleged prior inconsistent statements in a way that did not give Eckman a chance to repudiate them. In any event Statzer has never shown Eckman's live testimony would have been more supportive of his case. Indeed, by the time he sought an evidentiary hearing in January 2017, he ignored Eckman and focused on Richard Keith instead.

### The (Non-Existent) Richard Keith Testimony (Richardson and Popp Affidavits)

According to Statzer, his investigator's interview with Richard Keith produced

> abundant, unused impeachment **evidence**. It showed i) that Keith himself vehemently denied orally raping the victim; ii) that Sarah made the Keith allegations in March 2014—as litigation in family court pended between Keith and Sarah; iii) that the family court awarded Keith custody of their son, determined that Sarah had committed domestic violence, and issued a protection order against Sarah in favor of Keith over the son; iv) that Keith's alleged oral rape occurred from 2005-2011, yet Sarah's allegations arose three years later in March 2014—and only after the adverse custody order; v) that Sarah pressured social workers to undo the custody order because of the rape allegations against Keith; vi) that Keith confronted Sarah about her failed affair with Statzer during the family-court litigation, which caused Sarah to make the oral rape complaints against Statzer;

(Traverse, ECF No. 12, PageID 941; emphasis supplied).

With respect, the interview did not produce **evidence.** Instead it produced interesting information which perhaps could have been turned into evidence but was not.

The Richardson Affidavit is rife with hearsay that Keith would not have been permitted to repeat in court. For example, how does he know that Sarah pressured M.S. to accuse him falsely of oral rape? How does he know that Sarah told his sister that Sarah uses false accusations that men have orally raped her daughter to "fuck over" these men? How does he know that Sarah

23

falsely accused two other men of having orally raped M.S.? He would not have been competent to testify to any of those asserted facts.

The facts in the Richardson Affidavit of which Keith would have been competent to testify are that Sarah first made the allegations of oral rape of M.S. by Keith during court proceedings[11] involving the custody of their son, that during a court proceeding in that case he confronted her about her affair with Statzer, and that the allegations that Statzer orally raped M.S. were made some time after that proceeding. The fact is, however, as was well known to Bartlett at the time of trial, that Keith did not want to testify and had been told by his attorney not to allow himself to be interviewed by authorities at the time the allegations were made. He still refused to commit his evidence to affidavit form nearly three years later in January 2017, again on advice of counsel. The trial judge knew from the questions Bartlett asked M.S. based on the Eckman Affidavit at least that it was alleged M.S. had admitted her mother was pressuring her to testify against Statzer and that she had made some allegations of sexual misconduct of some kind against Keith. It was at least reasonable for the Ohio courts to conclude anything additional would not have been significant.

Relying on *Cone v. Bell*, 556 U.S. 449 (2009), Statzer argues a "procedural bar does not apply to a twice-presented claim (once on direct review and again in postconviction.)" (Traverse, ECF No. 12, PageID 935). That argument substantially overstates the holding in *Cone*.

*Cone* was a capital case from Tennessee. On direct appeal he asserted prosecutorial misconduct in failure to make the full discovery required by Tennessee law. 556 U.S. at 457. This was not a constitutional claim under *Brady v. Maryland*, 373 U.S. 83 (1963), but a state law claim. The Tennessee Supreme Court affirmed the conviction and death sentence. Cone then filed a post-

---

[11] From the description, the Magistrate Judge infers these were proceedings in a domestic violence criminal case rather than in a domestic relations court. The difference is not material.

conviction petition raising, *inter alia*, claims of ineffective assistance of trial counsel which the Tennessee courts also rejected. 556 U.S. at 457. Later Cone filed a **second** post-conviction petition which raised a *Brady* claim. *Id.* The trial court dismissed the petition, concluding the claims in it had been "previously determined" or were waived without categorizing particular claims as waived or previously determined, 556 U.S. at 458. The Tennessee Court of Criminal Appeals remanded "to allow [Cone], with the assistance of counsel, to rebut the presumption that he had waived any of his claims by not raising them at an earlier stage in the litigation."

While the remanded petition remained pending, Cone, under new Tennessee law, was granted access to the prosecutor's files and discovered previously undisclosed documents corroborating his drug-altered condition at the time of the murders. Nevertheless the Tennessee courts rejected the *Brady* claim as "previously determined." 556 U.S. at 460-61. The Supreme Court decided, however, that the *Brady* claim based on this new evidence had never been determined on the merits. The Court itself decided the newly-discovered evidence was not material to guilt, but remanded for the district court to decide if it was material to sentencing. 556 U.S. at 476.

Thus *Cone* does not hold that any time a claim is presented twice to the state courts there is no procedural bar to its consideration in federal habeas. Rather the Supreme Court found Cone's *Brady* claim, although presented to the Tennessee courts, had never been decided by those courts on the merits and thus could be decided on the merits in habeas.

Statzer's ineffective assistance of trial counsel claim is not comparable to Cone's *Brady* claim. It is based on evidence that was available to him at the time of trial which could have been, if necessary, included in the record on direct appeal.

The Magistrate Judge agrees with Petitioner that he did not default his ineffective

assistance of trial counsel claim.  Instead he raised it on direct appeal[12] and it was decided against him on the merits.

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court.  28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).  Deference is also due under 28 U.S.C. § 2254(d)(2) unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

The Twelfth District's decision in *Statzer I* is not an objectively unreasonable application of relevant Supreme Court precedent.  The court applied the correct federal standard enunciated in *Strickland v. Washington,* 466 U.S. 668 (1984), and found that Attorney Bartlett's performance was neither deficient nor prejudicial.  The conclusion was reasonable for the reasons already given. The decision is entitled to deference under the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA") as codified at 28 U.S.C. § 2254(d)(1).

If this Court were to review Statzer's ineffective assistance of trial counsel claim *de novo* it would reach the same result.  Attorney Bartlett made good use of the information he had from the Eckman Affidavit and the Family Services Report in cross-examining M.S. Once M.S. had explained that what she alleged happened between her and Keith was sexual in nature, the rape shield statute forbade further inquiry.  Once she explained her background shouting "it wasn't

---

[12] The claim on direct appeal was broader than the claim made in this Court in that it contained a sub-claim of ineffective assistance of trial counsel for failure to argue Ohio's rape shield statute was unconstitutional as applied to Statzer.  Petitioner has not brought that claim forward in habeas.

rape" to mean it was not vaginal intercourse, Bartlett had no other way to prove the accusation was false except for the hypothesized but never produced testimony of Richard Keith.

The decision of the Common Pleas Court, affirmed in *Statzer II*, that relitigating the ineffective assistance of trial counsel claim in post-conviction was barred by *res judicata* was a correct application of Ohio *res judicata* law as this Court understands it. Moreover, we are bound by the Twelfth District's determination of what Ohio *res judicata* law requires because that is a question of Ohio law. "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); see also *Elmendorf v. Taylor*, 23 U.S. (10 Wheat.) 152, 160 (1825)(Marshall C. J.); *Bickham v. Winn*, 888 F.3d 248 (6th Cir. Apr. 23, 2018)(Thapar concurring).

*White v. Warden, Ross Corr. Inst.*, 940 F.3d 270 (6th Cir. 2019), relied on by Statzer in his Supplemental Memorandum (ECF No. 15), does not change this result. In that case the Sixth Circuit held for the first time that *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413 (2013), apply to the Ohio system of litigating post-conviction constitutional claims. Under the *Martinez/Trevino* exception to the procedural default rule of *Coleman v. Thompson*, 501 U.S. 722, 753 (1991), if a defendant cannot appropriately litigate his claim of ineffective assistance of trial counsel on direct appeal because of the absence of evidence in the appellate record, then ineffective assistance of post-conviction counsel, measured by the *Strickland* standard, can excuse his failure properly to present the claim in post-conviction. That is not what happened here. The Twelfth District decided Statzer's ineffective assistance of trial counsel claim on direct appeal in *Statzer I*. When he attempted to relitigate it in post-conviction, the Ohio courts held he could not

do so because of the *Perry res judicata* doctrine and that the evidence he presented in post-conviction did not bring his case within the *Cole* exception to *Perry*.

**Ground Two:  Denial of Confrontation and the Right to Present a Defense**

In his Second Ground for Relief as pleaded, Statzer claims he was denied his Sixth Amendment rights to confront his accusers and to present a defense.  However, he makes no argument in support of this claim in his Traverse and accordingly has abandoned it.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

March 30, 2020.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.